UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAYNE BAILEY, | Civil Action No. 16-2600 (JLL) |
| Petitioner, | |
| v. | OPINION |
| LORETTA LYNCH, et al., | |
| Respondents. | |

**LINARES**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Wayne Bailey, filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following this Court's Order to Answer, the Government filed a response to the petition. (ECF Nos. 3-4). Petitioner did not file a reply. For the following reasons, this Court will deny the petition without prejudice.

**I. BACKGROUND**

Petitioner, Wayne Bailey, is a native and citizen of Jamaica who entered this country at an unknown time and place at some point prior to 1993. (Document No. 1 attached to ECF No. 4). In 1993, Petitioner was convicted of second degree murder in New York, for which he received a sentence of fifteen years to life imprisonment. (Documents 4-5 attached to ECF No. 4). While Petitioner was in prison on the murder charge, he underwent removal proceedings and was ordered removed to Jamaica by an immigration judge in June 1997 based on Petitioner's admissions and failure to seek relief from removal. (Document 6 attached to ECF No. 4). Petitioner waived his right to appeal that decision. (*Id.*). Following his release from prison on the murder charge,

1

Petitioner was briefly held in immigration detention, but was released on an order of supervision on February 20, 2014. (Document 1 attached to ECF No. 1 at 4).

On January 25, 2016, immigration officials revoked Petitioner's order of supervision and took him back into custody after the officials obtained a copy of Petitioner's original birth certificate with which to acquire a travel document from Jamaica. (Documents 7-8 attached to ECF No. 4). Upon his being taken back into custody, Petitioner was initially told that a travel document had been obtained for him, and that this was the basis for the revocation of his supervised release. (Document 1 attached to ECF No. 1 at 7-9). In a letter dated February 1, 2016, six days after the revocation of Petitioner's release, however, Petitioner's immigration attorney acknowledged that he had been informed that the true change in circumstances which resulted in the revocation of release was the acquisition of Petitioner's birth certificate, and that the assertion that there was already a travel document had been made in error. (*Id.*). In any event, it is clear that Petitioner was aware of the basis for the revocation for his release by February 1, 2016, and that this information was subsequently provided to Petitioner again in his April 2016 custody review papers denying him release. (Document 1 attached to ECF No. 1 at 1).

Following his being taken back into custody, Petitioner was taken to a meeting with the Jamaican consulate in order to acquire a travel document. (Document 8 attached to ECF No. 4). During that meeting, however, Petitioner told Jamaican officials that he was actually from the U.S. Virgin Islands. (*Id.*). Because Petitioner declined to admit his Jamaican citizenship during that interview, immigration officials issued a notice of failure to comply to Petitioner in July 2016, informing him that his failure to comply with his removal by misinforming the Jamaican consulate as to his place of birth had impugned the requirement that he comply with his removal, and that

2

his removal period would thus be extended until such time as he complied. (*Id.*). Petitioner has thus remained in immigration detention since that time.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Lemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### B. Analysis

Because Petitioner is currently subject to a final order of removal, his current detention is governed by 8 U.S.C. § 1231(a), and the propriety of that detention is thus controlled by the Supreme Court's decision in *Zadvydas*, 533 U.S. at 701. In *Zadvydas*, the Court observed that, under § 1231(a), the Government is required to detain aliens subject to final orders of removal throughout the ninety-day statutory removal period. *Id.* at 683. The Court also held that aliens may be detained beyond ninety days so long as their detention is "reasonably necessary" to effectuate their removal. *Id.* at 689, 699. Based on these two conclusions, the *Zadvydas* Court ultimately held that the detention of removable aliens for a period of up to six months following a final order of removal is presumptively reasonable. *Id.* at 701. Where a removable alien has been

detained under § 1231(a) for more than six months following his final order of removal, however, that alien may challenge his continued post-final order detention by showing that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* To make this showing, a habeas petitioner must first "'provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' after which the Government 'must respond with evidence sufficient to rebut that showing.'" *Alexander v. Att'y Gen.*, 495 F. App'x 274, 276 (3d Cir 2012) (quoting *Zadvydas*, 533 U.S. at 701). "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." *Id.* at 276-77.

In this matter, the Government first argues that it may continue to detain Petitioner because, at the time of his filing of the instant petition, he had not yet been held for the presumptively reasonable six-month period since being taken back into custody in January 2016. This argument, however, ignores both that Petitioner has previously been held subject to his current final order of removal and that the removal period does not restart simply because an alien who has previously been released is taken back into custody. Pursuant to the statute, the removal period, and in turn the presumptively reasonable period, beings from the latest of "the date the order of removal becomes administratively final," the date of a reviewing court's final order where the removal order is judicially removed <u>and</u> that court orders a stay of removal, or the alien's release from detention or confinement where he was detained for reasons other than immigration purposes at the time of his final order of removal. 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). Thus, as Petitioner was incarcerated pursuant to his murder conviction at the time of his order of removal, his removal period began when he was released from detention on that charge, which occurred sometime prior

to his release subject to an order of supervision in February 2014. Given that fact, Petitioner's removal period had concluded long before he was taken back into custody by immigration officials, and his detention is therefore not presumptively reasonable and is thus subject to challenge under *Zadvydas*.

That said, although Petitioner's presumptively reasonable period of detention had elapsed before he was taken back into immigration custody, his actions while in detention, specifically refusing to cooperate with his removal by telling Jamaican officials that he was born in the U.S. Virgin Islands despite his Jamaican birth certificate which immigration officials now possess, implicate 8 U.S.C. § 1231(a)(1)(C). Under that section of the statute, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent" his removal. 8 U.S.C. § 1231(a)(1)(C). Courts have long held that this section not only stands for the proposition that the removal period may be extended where an alien is the impediment to his own removal, but also that such an alien cannot demand his release under *Zadvydas* as he "has the keys to his freedom in his pocket and could likely effectuate his removal by providing" the necessary information to the appropriate officials. *See, e.g., Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003)(internal quotation marks omitted); *see also Callender v. Aviles*, No. 15-8579, 2016 WL 3792794, at * 3 (D.N.J. July 14, 2016). "Thus, '*Zadvydas* does not save an alien who fails to provide requested [information necessary] to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if [he] controls the clock.'" *Resil v. Hendricks*, No. 11-2051, 2011 WL 2489930, at *5 (D.N.J. June 21, 2011) (quoting *Pelich*, 329 F.3d at 1060).

In this matter, Petitioner has failed to show that he is entitled to release pursuant to *Zadvydas*. Although Petitioner asserts in his petition that he was told that no travel document would be issued by Jamaican officials in April, the reason for that is clear – he refused to admit to them his Jamaican citizenship and instead insisted he was born in the U.S. Virgin Islands despite the fact that immigration officials now possess a copy of his Jamaican birth certificate. Given that officials have that birth certificate, the only thing preventing Petitioner's removal is Petitioner's refusal to admit to his having been born in Jamaica. As such, the Government has more than rebutted Petitioner's attempt to show that he is not likely to be removed in the reasonably foreseeable future. Thus, Petitioner is not entitled to relief under *Zadvydas* both because it is likely that Petitioner will be removed in the reasonably foreseeable future as the Government possesses his Jamaican birth certificate, and because the only thing standing in the way of Petitioner's removal is Petitioner's refusal to admit to his country of birth when questioned by Jamaican officials. As Petitioner holds the key to his own release by way of removal to Jamaica, Petitioner is not entitled to release under *Zadvydas* at this time. *Callender*, 2016 WL 3792794 at * 3; *Resil*, 2011 WL 2489930 at *5; *see also Pelich*, 329 F.3d at 1060.

In addition to his argument that he is entitled to relief under *Zadvydas*, Petitioner also argues that his being taken into custody was improper under applicable immigration regulations because there was no change in circumstances nor violation of the order of supervision sufficient to warrant the revocation of his supervised release. Initially, this Court must note that Petitioner's claim is essentially that immigration officials acted contrary to their own regulations – and not that the actions of those officials were unconstitutional. The federal habeas statute under which Petitioner raises his claims, however, exists only to remedy custody which is in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3). It is therefore

doubtful that Petitioner's claim, even if true, would support habeas relief as Petitioner does not raise a claim of a constitutional magnitude.

In any event, Petitioner's regulatory claim is without merit. Pursuant to 8 C.F.R. § 241.13(i)(2), immigration officials may revoke an alien's release under an order of supervision if, "on account of changed circumstances," those officials "determine[] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Where officials so determine and move to revoke an alien's release, they are required to notify the alien of the reason for the revocation and provide him an opportunity to challenge that revocation by "submitting any evidence or information" to rebut the conclusion that he is likely to be removed. *Id.* at (i)(3). Where the revocation is disputed, immigration officials are also required to perform a custody review which takes into consideration any information so raised. *Id.*

In this matter, it is clear that immigration officials complied with these regulations. Here, Petitioner's release was revoked because of a change in circumstances – the acquisition of his Jamaican birth certificate – which led officials to conclude that it was likely that Petitioner could now be removed. Although Petitioner was initially erroneously informed that the revocation occurred because a travel document had been obtained, immigration officials corrected that misstatement within a week of his being taken into custody and informed Petitioner that his release had been revoked because immigration officials had obtained his birth certificate. (*See* Documents 7-8 attached to ECF No. 4; Document 1 attached to ECF No. 1 at 7). Petitioner's release was thus revoked based on a legitimate change in circumstances, and Petitioner was informed of the reason for that change within a week of being taken into custody. As Petitioner does not assert that this request for an opportunity to be heard was denied him, and as his subsequent custody reviews indicate that immigration officials have reviewed his detention following the letter from

Petitioner's immigration attorney, nothing in Petitioner's habeas petition establishes a violation of the relevant regulations. Thus, even if Petitioner's claim were of a constitutional magnitude and therefore sufficient to warrant habeas relief if meritorious, Petitioner's claim would not warrant relief as it is without merit based on the facts before this Court at this time. Petitioner's habeas petition must therefore be denied without prejudice at this time.

## III. CONCLUSION

For the reasons stated above, this Court will deny Petitioner's petition for a writ of habeas corpus (ECF No. 1) without prejudice. An appropriate order follows.

_____
Hon. Jose L. Linares,
United States District Judge